## BRYANT ELECTRIC CO. v. BUCHANAN et al.

(Circuit Court, E. D. Pennsylvania. August 8, 1903.)

### No. 30.

**1. PATENTS—INFRINGEMENT—INCANDESCENT LAMP SOCKETS.**
> The Lange patent, No. 434,153, for an incandescent lamp socket, was not anticipated nor so limited by the prior art that it must be narrowly restricted in construction. Claims 1 and 2 construed, and *held* infringed.

In Equity. Suit for infringement of letters patent No. 434,153 for an incandescent lamp socket, granted to Philip Lange August 12, 1890. On final hearing.

Howson & Howson, for complainant.
Horace Pettit and Edward Payson, for respondents.

J. B. McPHERSON, District Judge. This suit involves the validity of claims 1 and 2 in letters patent No. 434,153, applied for October 31, 1888, and granted August 12, 1890. The inventor was Philip Lange, but the patent was issued to the Westinghouse Electric Company, as assignee, and the title is now owned by the complainant. The subject-matter of the invention is a new and useful improvement in key-sockets for incandescent electric lamps. The scope of the improvement is thus described by Mr. Waterman, the complainant's expert:

> "The Lange patent, as its title, 'Incandescent Lamp Socket,' implies, relates to sockets or holders for incandescent electric lamps, by which they are at the same time held mechanically in position, and connected, or adapted for connection, with an electric circuit, by which they are to be supplied with current. The invention which the patent disclosed, in so far as concerns the two claims referred to, relates in general to a mechanical construction by which particular parts are brought and held together. It will be sufficient, as a general introduction, to say that, while the completed socket is a simple and comparatively insignificant looking article, its construction, to meet practical requirements, has been a problem of great difficulty, and its satisfactory solution has been a matter of imperative importance; for while the socket must, from a commercial standpoint, be small, light, simple, easily wired, and, as the English say, 'eyeable,' and though cheapness is essential, it is an article necessarily situated in a dangerous location in connection with live terminals in an electric circuit, and upon its mechanical stability and perfect performance of its function depend safety from fire, and even in many cases the safety of life, as well as continuous and satisfactory lighting service. It is, therefore, of paramount importance that the socket should preserve continuously the correct mechanical relation of its parts, and, as it is necessarily constructed of light metal parts and frail insulating materials, and is subjected to much rough usage, as well as to the weight of heavy globes and shades, correct relation of parts and methods of securing them together become of prime importance. These methods, moreover, must permit of the socket being quickly taken apart and conveniently wired or connected to the electric circuit, whether hung from a cord as a pendant or attached to a chandelier or other fixture.

"The object of the patent is to attain this correct relation of parts, and at once improve the mechanical construction, lessen its parts, and increase its durability. This is stated by the patentee:

" 'The object of the invention is to simplify and improve the mechanical construction of the device, and thereby lessen its parts, and increase its durability.' " (Page 1, lines 13 to 16.)

Fig.1.  Fig.2.

Fig.3.  Fig.4.  Fig.5.

The following extracts from the specifications will explain more clearly the construction referred to in the two claims now in suit:

"Referring to the figures, A represents a cup-shaped base adapted to be secured to a fixture of any suitable character. In this base there is set a base-plate, B, of nonconducting material. The plate, B, is secured in position by means of two screws, b, b, which enter corresponding lugs b1, b1, extending from the bottom of the base, A, parallel with its plates. These lugs may be

conveniently formed upon a ring, b, which surrounds the portion a, which screws into the fixture. The portion a may be soldered or screwed or otherwise fastened into the cup-shaped portion of the base. A screw, $a^1$, serves to bind the base upon the fixture. The screws, b, are designed to project over the shoulders, $b^2$, $b^2$, in the plate B, and thus hold it in position. The bottom of the base-plate, B, is constructed with a recess or groove, $b^2$, which fits over the portion of the lugs b', b', lying along the bottom of the cup. This prevents the plate from being turned in the cup. The screws, b, pass freely through the flange of the base, and screw into the lugs, and by means of them the outer shell, presently to be described, may be held firmly between the flange of the base and the lugs. * * *

"The entire working parts of the socket and the inner shell, D, are inclosed in an outer shell, M, which fits over the shell D and the plates B and C, and extends into the bottom of the cup, A. The shell M is provided with a slot, m, for receiving the shaft, k', of the key, and two small slots, m', and $m^2$, which pass over the screws, b, b, between the outer shell and the lugs, b', b'. When the screws are tightened, they pinch the shell between the flange of the base A and the lugs b', holding it securely in position.

"When the socket is being applied to the fixture, both the shell and the working parts are removed by loosening the screws, b. The bottom is then screwed upon the fixture, the plate B is inserted, and the screws tightened sufficiently to hold it in place. After the wire connections have been made, the outer shell is slipped into position and fastened by tightening the screws, b. It will be seen thus that the number of parts which the workman is obliged to handle in putting the socket into position is reduced to a minimum."

Claims 1 and 2 of the patent are as follows:

"(1) In a key-socket, the combination, with the base, of the base-plate contained therein, screws passing through the sides of the base holding said base-plate in position, lugs carried by the base through which said screws pass, and a recess in the base-plate fitting over the lugs.

"(2) In a key-socket, the combination, with the base, of the base-plate contained therein, screws passing through the sides of the base holding said base-plate in position, lugs carried by the base through which said screws pass, and a shell extending between the lugs and the base and held in position by pressure."

The construction thus claimed is described so lucidly by Mr. Waterman that I prefer to transcribe that portion of his testimony, rather than attempt to put into my own words what I am sure would be a less intelligible description:

"The socket described, as will be seen by reference to the drawings, consists of an outer shell or case and an inner insulating and connecting mechanism or structure (Figs. 3 and 4) separable therefrom as a unit. The exterior case consists of a base, A, and a cylindrical shell, M, separable from the base, the latter being provided with a screw-threaded neck, a, and set-screw, $a^1$, for attaching it to a chandelier or fixture. The interior portion, consisting of the insulating parts and connections, is shown as having a base-plate, B, from which all the other parts depend, and by means of which they are fastened within the base, A, of the exterior case. This base-plate is constructed of insulating material, and forms. in conjunction with the plate, C, rigidly connected with it by arms, $c^1$, $c^2$, an insulating chamber for the reception of the necessary connections for the electric circuit. Below the plate C is a spring shell, E, for receiving a lamp and connecting one terminal of it with the electric circuit, while depending through a hole in the center are two spring arms for grasping the central contact of a lamp, and so connecting its other terminal.

"A suitable switch mechanism is shown for turning the lamp on or off at will. This interior portion constitutes a single, strong and durable structure, and the assembling of these three main parts or divisions of the structure— the base, the mechanism, and the exterior shell—into one unit mechanically

in a convenient, strong, and serviceable manner is the particular problem to which claims one and two relate, as I understand them.

"As shown in Fig. 5, the base is provided with two lugs, b¹, b¹, which the patent says may be conveniently formed upon the common central ring securely fastened in place within the base, the two lugs extending outwardly and downwardly parallel with the sides of the base. These lugs are formed of material sufficiently strong to give the necessary mechanical strength, and sufficiently thick to be drilled and screw-threaded and receive screws b, b, passing through holes in the outer cylindrical portion of the base, and screwed into the lugs as shown in Fig. 5. As shown in Figs. 2, 4, 5, and in dotted lines in Fig. 3, the base-plate, B, of insulating material, is grooved to fit over the lugs, and hollowed out at its sides at opposite ends of a diameter to receive the ends of the screws, b, b. By this means the interior part or mechanism is held within the base without regard to the presence or absence of the exterior shell, M. This shell is provided with two small slots, m¹, m², so that the shell may be slipped upwards toward the base and pass between the exterior of the base and the depending lugs. By tightening upon the screws, b, b, the shell is firmly clamped between the exterior of the base and the lug, whereby a large clamping area is secured, and an exterior friction placed upon the shell, so that in spite of the light materials and of the great strain imposed by the weight of globes and shades, the socket is enabled to preserve rigidly the proper mechanical relation. * * *

"Referring now to the claims, I find that they have particular reference to those features of the construction by which the several parts are adapted to one another and held together. Claim 1 reads as follows:

" '(1) In a key-socket, the combination, with the base, of the base-plate contained therein, screws passing through the sides of the base holding said base-plate in position, lugs carried by the base through which said screws pass, and a recess in the base-plate fitting over the lugs.'

"This claim calls for very little comment. It is addressed to the union of the socket-base with the base-plate of the interior mechanism by means of the lugs which I have described, and into which the screws are threaded, and through which they pass into recesses in the base-plate, whereby the interior mechanism is held in position, whether the exterior shell is present or not, and permitting of the removal of the latter, while the base-plate, with its connections and the wires leading thereto, remain undisturbed. * * *

"Claim 2 reads as follows:

" '(2) In a key-socket, the combination, with the base, of the base-plate contained therein, screws passing through the sides of the base holding said base in position, lugs carried by the base through which said screws pass, and a shell extending between the lugs and the base, and held in position by pressure.'

"This claim is evidently directed to the method of holding the exterior shell by clamping it in position between the lugs and the base, whereby a strong gripping pressure is exerted to hold the shell against displacement by rough handling, the weight of the shade, and the like, while permitting it to be quickly and readily removed by the simple loosening of the two screws."

The defendants appear to concede that the patent is valid, unless it was anticipated by a socket, called in the testimony "Mather No. 2;" and the complainant admits that the first claim of the patent would be anticipated by this socket, if its existence can be carried back to the latter part of 1887; this being the date referred to by the only witness that supports the defendants' attempt to prove the prior right of Mather No. 2. It is clear to my mind, however, that the witness was mistaken—honestly, no doubt—and that the date of Mather No. 2 cannot be fixed earlier than 1889 at the best. In my opinion, the testimony that establishes the priority of Lange is overwhelming, and I shall not take either time or space to transcribe it from the record.

Assuming, therefore, the patentability of the Lange device, it seems

clear to me that the socket sold by the defendants is an infringement. To use Mr. Waterman's language once more:

"The 'Complainant's Exhibit Defendants' Socket,' is in every way such a socket as is referred to in the Lange patent and illustrated by the Lange and Bryant exhibit sockets, and consists of a base-plate of porcelain substantially like those in the exhibit Bryant sockets, arranged for Westinghouse and Edison lamp bases, and from which, as in the Lange patent, all connections and working parts depend. It has a base and an exterior shell substantially exactly as shown in the Lange patent. The base is provided with lugs which are formed upon a ring, as described on page 1, lines 36 to 38; the ring being fastened into the base by surrounding the neck portion (a), as shown in the Lange patent. These lugs are drilled and screw-threaded, and through them pass screws entered through holes in the cylindrical portion of the base; also as shown in the Lange patent. These screws pass into recesses in the base-plate, thereby holding the latter and the entire interior mechanism in position in the base independently of the presence of the shell, there being recesses in the base-plate fitting over the lugs. The exterior shell is slotted, and extends between the lugs and the base-plate, and is clamped between them by the tightening of the screws, whereby the two screws serve to effect the entire union of the parts in such a strong and rigid manner as to meet the requirement of the lamp socket which I have referred to, and give the necessary facility of handling, convenience of wiring, and cheapness of manufacture. The substantial identity of the construction with the exhibit Lange socket and exhibit Bryant sockets, will be apparent at a glance.

"Comparing with the two claims of the Lange patent inquired about, the 'Complainant's Exhibit Defendants' Socket' is, in my opinion, such a socket as is referred to in those claims in all substantial respects. It has the combination with the base of a base-plate contained therein, screws passing through the sides of the base holding said base-plate in position, lugs carried by the base through which said screws pass, and a recess in the base-plate fitting over the lugs, all substantially as described in the Lange patent, whereby the base-plate and the interior mechanism are united to the socket base, and held together independently of the presence of the shell. It has also the peculiar features of the second claim, namely, a shell which extends between the lugs and the base, and is held in position by pressure, being clamped between the base and the lugs, as shown and described in the Lange patent, so that the said screws unite the shell and the base and also unite the base-plate and the base.

"For these reasons, 'Complainant's Exhibit Defendants' Socket' contains the construction which I understand is set forth in the Lange patent, and particularly referred to in claims one and two."

The principal defense appears to be that the prior art requires the patent to be so narrowly construed that the defendants' construction does not infringe. I have already said that the charge of infringement seems to me to be established, and the remark was not made without having had in mind the defense now referred to. I do not think it necessary to add more than a few words. To discuss the prior art fully would extend this opinion unduly, and would be little more than a substantial reproduction of Mr. Waterman's testimony in rebuttal—to which I refer with approval. Three principal types of sockets—the Thompson-Houston, the Bergman, and the Mather No. 1—were in use before the Lange patent, and it is these upon which the defendants rely. As it seems to me, however, the devices comprised in each of these classes have been fully and satisfactorily distinguished from the socket in suit. I do not believe that the Lange patent is to be so narrowly restricted that the recess in the defendants' device must be held to be a successful evasion, merely because it is somewhat different in shape and construction from the recess in the complain-

ant's socket, as long as it performs the same function, and does in like manner co-operate with the screws to hold the plate in position. Further, if I understand correctly the two devices in controversy, it is pressure in each case that holds the shell in position. This is practically admitted by the general manager of the real defendant—the New England Electric Manufacturing Company—who testified that the screws in the defendants' socket ought to be tightened as far as they would go, in order to hold all parts of the socket together as firmly as possible, thus holding the shell tightly between the lugs and the flange of the cap. Inspection of the two sockets will show at once, I think, that there is scarcely any room to dispute that in each the shell is held in place by the same means, and that the bayonet-joint of the defendants' socket would be ineffective without the screws.

On the whole case I think the complainant is entitled to the usual decree for an injunction and an accounting.